67867, 67939. ITT TERRYPHONE CORPORATION v. MODEMS PLUS, INC.; and vice versa.

CARLEY, Judge.

ITT Terryphone Corporation (Terryphone) entered into three sales contracts with Modems Plus, Inc. (Modems) whereby Terryphone agreed to sell certain telephone equipment to Modems. After the goods had been delivered, Modems defaulted on the obligation, and Terryphone repossessed the equipment. Terryphone later initiated suit against Modems, seeking money due and owing to it on the sales contracts. Modems filed a motion to dismiss Terryphone's complaint on the ground that Terryphone, as a secured creditor, had failed to comply with provisions of the Uniform Commercial Code. Affidavits were filed by both parties. The motion was construed as being for summary judgment and was granted by the trial court. In Case Number 67867, Terryphone appeals from the order granting Modems' motion for summary judgment. Modems subsequently moved the trial court to dismiss Terryphone's appeal in Case Number 67867 due to Terryphone's asserted unreasonable and inexcusable delay in paying the costs of the appeal. That motion was denied. Case Number 67939 is Modems' cross-appeal from the denial of its motion to dismiss Terryphone's appeal.

*Case No. 67939*

1. We initially note that, contrary to Terryphone's assertions, the trial court's denial of Modems' motion to dismiss the appeal is a final order which is not interlocutory but is directly appealable to this court. The trial court had previously granted summary judgment to Modems, and therefore the case is no longer pending in the court below. See OCGA § 5-6-34; *Corbin v. First Nat. Bank of Atlanta*, 151 Ga. App. 33 (258 SE2d 697) (1979); *Patterson v. Professional Resources*, 242 Ga. 459 (1b) (249 SE2d 248) (1978).

The record reveals that Terryphone received the bill for costs in Case No. 67867 on August 19, 1983. Modems filed its motion to dismiss the appeal for failure to pay costs on September 23, 1983. Upon receipt of that motion, Terryphone paid the costs on September 26, 1983. Counsel for Terryphone filed an affidavit in opposition to the motion to dismiss wherein he stated that the bill for costs had not been timely paid due to a mistake by an inexperienced former employee. Furthermore, counsel's affidavit stated that he had no knowl-

edge of the receipt by his office of the bill until he received Modems' motion to dismiss, at which time he promptly paid all costs.

In cases where the costs have not been paid within 20 days of appellant's receipt of notice of the amount of costs, the trial court may order an appeal dismissed if appellant's failure to earlier pay the costs has caused an unreasonable *and* inexcusable delay in the transmission of the record to the appellate court. OCGA § 5-6-48 (c). The trial court's decision in this matter will be reversed only for an abuse of discretion. *Patterson v. Professional Resources*, supra at 460. " 'It is the policy of both appellate courts in Georgia to attempt to avoid dismissing appeals and to try to reach the merits of every case when it can be done consistent with the mandate of the law.' [Cit.] From the record before us, we cannot say as a matter of law that the delay was both unreasonable and inexcusable." *Corbin v. First Nat. Bank of Atlanta*, supra at 34. The trial court did not abuse its discretion in denying the motion to dismiss the appeal.

### Case No. 67867

2. The trial court granted summary judgment to Modems on the ground that Terryphone had failed to act in a commercially reasonable manner in disposing of the repossessed equipment, and therefore was precluded from bringing a suit on the contracts. Terryphone asserts that the trial court erred in granting summary judgment to Modems on this basis.

The record reveals that following Modems' default, Terryphone repossessed the equipment. Terryphone did not attempt to dispose of the equipment, nor did it notify Modems that it intended to retain the collateral in satisfaction of the obligation. Instead, Terryphone chose both to retain the collateral and to initiate the instant suit against Modems on the sales contracts. It is Modems' position that, under the terms of the sales contracts, Terryphone was required to dispose of the repossessed equipment in a commercially reasonable manner as a condition precedent to any recovery on the contracts.

It is undisputed that the contracts provided that upon default, Terryphone "shall have the remedies of secured party under the Uniform Commercial Code." OCGA § 11-9-501 (1) provides in pertinent part as follows: "When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and . . . those provided in the security agreement. He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. . . . The rights and remedies referred to in this subsection are cumulative." The remaining provisions of Chapter 9 of the Uniform Commercial Code elaborate on these cumulative remedies:

"Once default has occurred, the creditor is authorized to take or

retain possession of the collateral. [OCGA § 11-9-503]. He may then proceed to reduce his claim to judgment, to foreclose on the goods, to dispose of the collateral in a commercially reasonable manner, or to retain the goods in satisfaction of the debt. [OCGA §§ 11-9-501, 11-9-503, 11-9-504, 11-9-505]. *Nothing in the Code prohibits the creditor in possession of the goods from proceeding in a judicial action on the note.* The remedies are cumulative and the creditor is not required to reduce himself to the position of an unsecured creditor so long as he acts in a commercially reasonable manner and does not, by his actions or omissions, further impair the position of the debtor. [Cits.]

" 'It is, of course, basic law that the purpose of collateral is to secure the creditor and increase his chance of recovery in the case of default. The existence of a security interest in no way affects the existence of the debt. It merely provides the secured party with an immediate source of recovery in *addition to the standard remedies of an unsecured creditor. . . .* [T]he intent of the code was to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies.' [Cit.]" (Emphasis supplied.) *McCullough v. Mobiland*, 139 Ga. App. 260, 263 (2) (228 SE2d 146) (1976).

Therefore, Terryphone's election to repossess the collateral and then to file suit on the contracts without first disposing of the collateral was not improper under the terms of the sales contracts or of the Uniform Commercial Code. The trial court erred in granting summary judgment to Modems on this basis.

3. " 'This does not mean, however, that the [creditor] owes no duties to [the debtor] with respect to the collateral . . . It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has *possession* he must act in a *commercially reasonable manner* toward sale, lease, proposed retention, where permissible, or other disposition . . . If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. *To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.*' [Cit.]" (Emphasis supplied.) *Henderson Few & Co. v. Rollins Communications*, 148 Ga. App. 139, 141 (250 SE2d 830) (1978).

Thus, a creditor must act in a commercially reasonable manner once he has possession of the collateral. The issue of commercial rea-

sonableness is to be decided by the trior of fact. See *Ennis v. Atlas Finance Co.*, 120 Ga. App. 849 (172 SE2d 482) (1969). In the instant case, the evidence did not demand a finding on motion for summary judgment that Terryphone acted in a commercially unreasonable manner when it repossessed the collateral, and without ever disposing of it, filed suit against Modems. There was evidence that the collateral was component equipment and in the past, Terryphone had been able to dispose of similar equipment at only a fraction of its original sale value. There was also no evidence that the collateral had depreciated in value while in Terryphone's possession, nor was there any evidence that Modems had been injured by the repossession of the collateral. Based upon the foregoing, the evidence of record on motion for summary judgment fails to establish that, as a matter of law, Terryphone did not act in a commercially reasonable manner. If, after further discovery, it is established that Terryphone did not act in a commercially reasonable manner, the balance of the indebtedness owed by Modems on the contracts should be reduced by the value of the equipment at the time it was repossessed plus the amount of any damage sustained by Modems as a result of Terryphone's inaction in returning or disposing of the goods. See *Henderson Few & Co. v. Rollins Communications*, supra at 142; Michigan Nat. Bank v. Marston, 29 Mich. App. 99 (185 NW2d 47) (1970); Harris v. Bower, 266 Md. 579 (295 A2d 870) (1970). In other words, Modems' obligation on the indebtedness may be reduced by the amount of "any loss caused by [Terryphone's] failure to [act in a commercially reasonable manner]." OCGA § 11-9-507 (1). See OCGA § 11-9-504 (3); White & Summers, Uniform Commercial Code, § 26-14, pp. 997-998, fn. 152; Jones v. Morgan, 58 Mich. App. 455 (228 NW2d 419) (1975).

4. The trial court also granted summary judgment to Modems on the ground that Terryphone's post-repossession actions constituted a rescission of the contracts. This court has long recognized that where a creditor repossesses and retains collateral as his own, without any excuse for failing to dispose of the goods, and does not demand payment of the contract, such actions may constitute a rescission of the contract by the creditor. *Cornett & Co. v. Newsome*, 27 Ga. App. 340 (108 SE 254 (1921); *Bradford v. Lindsey Chevrolet Co.*, 117 Ga. App. 781, 782 (2) (161 SE2d 904) (1968). But see White & Summers, Uniform Commercial Code, § 26-14, pp. 1001-1002, fn. 173. However, our review of the record reveals that a question of fact exists as to whether Terryphone rescinded the contracts. There is evidence that Terryphone offered to surrender the collateral to Modems upon payment of the indebtedness, continually maintained that the transaction was valid, and otherwise acted in a manner consistent with the contracts. The trial court erred in granting summary judgment to Modems in that a question of fact remained as to whether Ter-

ryphone acted in a manner which amounted to a retention of the collateral in satisfaction of the obligation. See *Wood v. Yancey Bros. Co.,* 135 Ga. App. 720 (2) (218 SE2d 698) (1975); *McCullough v. Mobiland,* supra at 261-262; *Bradford v. Lindsey Chevrolet Co.,* supra at 782; Harris·v. Bower, supra.

*Judgment in Case No. 67939 affirmed. Judgment in Case No. 67867 reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 20, 1984 —
REHEARING DENIED JULY 24, 1984.

*Alan E. Cohen, T. Gordon Lamb,* for appellant.
*Henry R. Stringfellow,* for appellee.